UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JODI FOREN,

           Plaintiff,

v.                                                       Case No. 23-cv-00095-bhl

LBC OPTICS INC and WISCONSIN VISION INC,

           Defendants.

---

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

---

      This case involves claims by Plaintiff Jodi Foren against her former employers, Defendants LBC Optics Inc. and Wisconsin Vision Inc., for retaliation and interference in violation of the Family and Medical Leave Act (FMLA). Defendants have moved for summary judgment on all claims. (ECF No. 21.) The parties dispute nearly every fact and offer two starkly different versions of events. According to Foren, she was a strong employee who was terminated the day *after* filing her FMLA leave request. According to Defendants, Foren had a history of behavioral issues that ultimately led them to terminate her employment the day *before* she submitted her FMLA leave request. Given the parties' disparate versions of the material facts, and the existence of credible evidence supporting each, Defendants' motion for summary judgment must be denied.

**FACTUAL BACKGROUND**

      Wisconsin Vision is an optical company located in New Berlin, Wisconsin. (ECF No. 34 ¶1.) In addition to providing eye exams, Wisconsin Vision sells corrective lenses and eyeglasses. (*Id.* ¶2.) LBC Optics shares its principal place of business with Wisconsin Vision, and it manufactures lenses for Wisconsin Vision's patients. (*Id.* ¶¶1, 3–4.) Foren is a former Lab Tech at LBC Optics, where her job included accepting deliveries, scanning deliveries into inventory, and retrieving lenses from inventory. (*Id.* ¶¶5–7.).

      Foren began her employment at LBC Optics on August 26, 2020. (*Id.* ¶5.) She was directly supervised by Chad McFadin, who was LBC Optics' General Manager. (*Id.* ¶8.) Amber Sendejaz was a Human Resources Generalist at Wisconsin Vision who LBC Optics used for assistance on human resource matters. (*Id.* ¶10.) Joe Mikich is a union representative at LBC Optics. (*Id.* ¶11.)

Andy George is LBC Optics' Owner and President. (*Id.* ¶12.) Beyond these basic facts, the parties present two entirely different versions of events.

According to Defendants, LBC Optics began having problems with Foren in March 2022, when a coworker complained to Mikich that Foren was becoming increasingly rude, slamming trays, and making the workplace uncomfortable. (*Id.* ¶11.) On March 31, 2022, Foren met with McFadin, Sendejaz, Mikich, and George to address concerns about her behavior. (*Id.* ¶12.) Defendants maintain that Foren refused to take responsibility for her actions or express any willingness to change her behavior, and, instead, stood up and walked out of the meeting while George was talking. (*Id.* ¶¶13–15.)

In the week after the meeting, Defendants report that Foren continued to be "rude, uncooperative, and hostile." (*Id.* ¶16.) She talked back to McFadin and aggressively slammed trays on counters. (*Id.* ¶¶16–18.) On April 6, 2022, when McFadin questioned Foren about her failure to process an order, she falsely responded that he had told her to save the order for training. (*Id.* ¶19.) McFadin then asked her to complete the order, but Foren requested union representation and stormed off. (*Id.*) Later, McFadin and Sendejaz met to discuss Foren's behavior and agreed to record in writing the events of the preceding week. (*Id.* ¶20.) They also informed Mikich of Foren's conduct. (*Id.*)

After McFadin determined that further discipline was warranted, Sendejaz assisted him in writing a Corrective Action Record detailing Foren's behavior. (*Id.* ¶¶22–23.) On April 8, 2022, McFadin and Sendejaz met with Foren to go over the Corrective Action Record. (*Id.* ¶¶24–25.) During the meeting, Foren interrupted McFadin multiple times and tried to excuse her failure to complete the order by stating that the order came later than usual and was delivered by a different driver. (*Id.* ¶¶25–26.)

The following week, on April 11, 2022, Foren utilized a sick day, believing she had contracted COVID-19. (*Id.* ¶29.) That same day, Sendejaz reviewed the security footage from April 6, 2022, and saw that the delivery was made at its normal time, by the normal driver. (*Id.* ¶30.) After Sendejaz informed McFadin of this development, he decided to terminate Foren's employment on April 11, 2022, effective April 8, 2022, the last day Foren worked. (*Id.* ¶¶31–32.) McFadin planned to notify Foren of the decision as soon as she returned to work. (*Id.* ¶35.) But Foren called in sick the next day, April 12, and then submitted a request for leave under the FMLA. (*Id.* ¶¶36–37.) Because the paperwork indicated that it was unknown when Foren would return to

work, Sendejaz sent Foren an e-mail notifying her of the decision to terminate her on April 13, 2022. (*Id.* ¶41.) Defendants primarily rest their version of events on declarations from Sendejaz and McFadin. (ECF Nos. 24 & 25.)

Foren relates a different version of events. She insists that, before March 31, 2022, she had never received any negative feedback about her work or any suggestion that she had behavioral issues. (ECF No. 36 ¶¶4–5.) She contends that she was promoted on October 6, 2021, and that McFadin had recommended she apply for another promotion on or around March 10, 2022. (*Id.* ¶¶2, 6.) According to Foren, the March 31, 2022 meeting did not focus on disciplinary matters; instead, the primary subject surrounded her attempts to obtain safety material information from the union. (*Id.* ¶17.) Foren denies being disrespectful, uncooperative, or hostile following the March 31 meeting. (ECF No. 34 ¶16 (citing ECF No. 32 ¶25).)

With respect to April 6, 2022, Foren denies telling McFadin that he had asked her to save the order; she reports that she told him that she did not process the order because she was unsure if it would be used for training purposes. (*Id.* ¶19 (citing ECF No. 26-1 at 147:5–13).) Foren also denies that she was disrespectful during the interaction. (*Id.* (citing ECF No. 32 ¶25).) Foren further insists she was respectful and open to feedback at the April 8, 2022 meeting. (*Id.* ¶25 (citing ECF No. 32 ¶¶25, 33, 34).) She reports that the April 8 meeting went well, and that McFadin indicated he expected no future problems from her. (*Id.* (citing ECF No. 32-7 at 7).) She also points to a text from McFadin to George on April 8 in which McFadin indicates his belief that the complaints about Foren may not have been entirely truthful and may have been due in part to unfair targeting by another employee. (ECF No. 36 ¶32; ECF No. 32-7 at 6.)

Foren also denies lying about the substitute driver being late and states that the Corrective Action Record corroborates that the April 5, 2022 order had not been received on time. She contends that Sendejaz reviewed security footage from the wrong day (April 6, 2022 instead of April 5, 2022). (ECF No. 34 ¶¶26, 30 n.1 (citing ECF No. 25-2 at 1).)

On April 11, 2022, Foren confirms she believed she had contracted COVID-19 and called in sick to work. (*Id.* ¶29.) She called in sick again on April 12, 2022, and, that same day, submitted a request for FMLA leave. (*Id.* ¶¶36–37.) Later that day, McFadin texted George, informing George of Foren's request for leave; George responded by asking if that meant Foren would be out for twelve weeks. (ECF No. 36 ¶¶35–36; ECF No. 32-7 at 9.) There was no mention of Foren being terminated in the texts between McFadin and George on April 12, 2022. (ECF No. 36 ¶¶35–

42.) Foren received notice of her termination the day after her leave request, on April 13, 2022. (ECF No. 34 ¶¶41–42.)

Foren filed this suit on January 25, 2023, against Wisconsin Vision and LBC Optics, alleging that both entities violated 29 U.S.C. § 2615(a)(1)–(2) by terminating her after her FMLA leave request was submitted. (ECF No. 1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in

the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

## ANALYSIS

The FMLA provides eligible employees suffering from serious medical conditions with as many as twelve weeks of unpaid leave during any twelve-month period. 29 U.S.C. § 2612(a)(1)(D). Employers cannot interfere with or retaliate against an employee's use or attempted use of FMLA leave. § 2615(a). A retaliation claim requires an employee prove the employer's discriminatory or retaliatory intent, while an interference claim requires the employee prove that the employer denied her benefits as provided by the FMLA. *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012). Because Foren has presented evidence sufficient to establish both a claim of FMLA retaliation and a claim of FMLA interference, Defendants' motion for summary judgment must be denied.

**I. Foren Has Provided Sufficient Evidence for a Jury to Find Defendants Liable for FMLA Retaliation.**

Foren's first claim is for FMLA retaliation. (ECF No. 1 ¶¶22–25.) The FMLA states that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To succeed on a retaliation claim, the plaintiff-employee must show: (1) the employee was engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action. *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (citing *Pagel*, 695 F.3d at 631).

Defendants do not dispute that Foren's request for leave was statutorily protected, and they concede that her termination was an adverse action. (*See* ECF No. 22 at 10–13.) But they insist they are entitled to summary judgment on the third element, arguing that Foren has failed to provide evidence sufficient to show a causal connection between her leave request and her subsequent termination. (*Id.*)

To determine whether the FMLA leave request caused the termination, the Court must consider "whether the evidence would permit a reasonable factfinder to conclude that [Foren's FMLA leave request] caused the discharge." *See Rowlands v. UPS*, 901 F.3d 792, 801 (7th Cir.

2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).[1] The Seventh Circuit has confirmed that Foren does not need to prove that retaliation was the *only* reason for her termination; she must simply show that her request for leave was a "substantial or motivating factor" in her employer's decision to terminate her employment. *Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1307 (7th Cir. 2022) (citing *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741–42 (7th Cir. 2008)).

Defendants argue that Foren has not met this burden, because they terminated her for three legitimate grounds: (1) her dishonesty regarding the driver; (2) her poor behavior; and (3) acts of insubordination. (ECF No. 22 at 12.) They also maintain that her FMLA leave request could not have caused her termination, because the decision to terminate her was made on April 11, 2022, one day before she submitted her request. (*Id.*) They rely upon declarations from McFadin and Sendejaz to support their assertions. (*See* ECF No. 34 ¶¶34, 40.)

In response, Foren disputes Defendants' explanations and maintains they are mere pretexts to cover up Defendants' FMLA violations. (ECF No. 31 at 8–9.) To support this assertion, Foren provides a sworn declaration in which she insists that she never lied or otherwise had behavioral problems at work. (ECF No. 32 ¶¶20–40.) She maintains that McFadin was aware there were no behavioral problems and that he believed all complaints about her were due to unfair targeting. (ECF No. 32 at 9.) And she asserts that the decision to fire her was made after her leave request was submitted. (*Id.* at 10.) Foren relies not just on her own declaration, but also points to text messages exchanged between McFadin and George, as well as her termination letter. (ECF No. 36 ¶¶7–8, 32–33, 41–42, 44.) Foren also notes that while McFadin attested that Foren was "inappropriate and unprofessional" at the April 8 meeting, (ECF No. 25 ¶19), his text message to George after the meeting describes the interactions with Foren as "pleasant" and states that there was "more to this thing than [McFadin and George] initially thought" and that Foren was "being targeted." (ECF No. 32-7 at 6–7.) And on April 12, 2022, McFadin and George exchanged texts discussing Foren's sick leave, with no mention of a prior decision to terminate her employment. (ECF No. 31 at 12; *see* ECF No. 32-7 at 8–9.) Foren argues that all this evidence supports the contention that the decision to fire her was made after her FMLA leave request was submitted. (ECF No. 31 at 10.)

---

[1] Though *Rowlands* involved claims under the Americans with Disabilities Act, FMLA retaliation claims are subject to the same analysis. *Freelain*, 888 F.3d at 900–02.

In the end, the record is sufficiently in dispute, and Defendants' summary judgment motion cannot be granted. While Defendants maintain that credible testimony from McFadin and Sendejaz confirms that the decision to terminate Foren was made on April 11, (ECF No. 35 at 5), the Court does not make credibility determinations at summary judgment. Foren has presented evidence that could support a jury finding that the decision to terminate her was made after her FMLA leave request was filed. The pertinent question is whether Foren has presented facts sufficient to support a jury finding all of the facts necessary to support her legal claim. *See Modrowski*, 712 F.3d at 1168. Because she has done so, Defendants' motion must be denied. *See Liberty Lobby*, 477 U.S. at 255; *see also Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

Defendants argue that, even if Foren's version of events are believed, Foren has only presented suspicious timing as evidence that it terminated her in retaliation for her FMLA leave request. (ECF No. 22 at 13.) They argue that suspicious timing alone is not enough to survive summary judgment. (*Id.*) Defendants are correct that suspicious timing alone is generally insufficient to create a jury issue on a retaliation claim. *See Rowlands*, 901 F.3d at 802. But when "an adverse action comes so close on the heels of a protected act," then "an inference of causation is sensible." *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011). Moreover, suspicious timing is not the *only* evidence of retaliation Foren has presented.

Foren contends that, due to the firing being so close in proximity to her FMLA leave request, paired with the texts between McFadin and George on April 12 that do not discuss her termination, a reasonable jury could determine she was fired because of her request. (ECF No. 31 at 10 (citing *Loudermilk*, 636 F.3d at 315).) The Court agrees with Foren. Courts can and should consider circumstantial evidence when determining if there is a causal link between the protected activity and the adverse action. *Freelain*, 888 F.3d at 905. Circumstantial evidence includes "suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Pagel*, 695 F.3d at 631 (citing Jajeh v. Cook County, 678 F.3d 560, 570 (7th Cir. 2012)). Here, viewing the record in Foren's favor, the timing itself is suspicious; Foren was allegedly terminated the day after her request was made. In addition, there is circumstantial evidence that could suggest the reasons for termination are pretext. Foren has presented evidence of arguably inconsistent statements by McFadin regarding the April 8 meeting.

(*Compare* ECF No. 25 ¶¶9–19 *with* ECF No. 32-7 at 4–7.) She has also presented evidence that McFadin and George were discussing Foren being out for twelve weeks on April 12, 2022, which supports an inference that they had not decided to fire her prior to receiving her FMLA request. (*See* ECF No. 32-7 at 8–9.) A reasonable jury could conclude that the suspicious timing, paired with the inconsistent statements and the text messages between McFadin and George, indicates that Foren was terminated not because of behavioral issues but because she requested FMLA leave. Therefore, summary judgment on Foren's retaliation claim must be denied.

## II. Foren Has Also Provided Sufficient Evidence for a Jury to Find Defendants Liable for FMLA Interference.

Foren's second claim is for FMLA interference claim, (ECF No. 1 ¶¶26–29), and it too is sufficiently supported to survive summary judgment. To succeed on an FMLA interference claim, Foren must show: (1) she was eligible for FMLA protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of intent to take FMLA leave; and (5) she suffered "prejudice," or harm from the violation, including the denial of FMLA benefits. *See Ziccarelli v. Dart*, 35 F.4th 1079, 1084–85 (7th Cir. 2022). A termination may constitute a denial of benefits if the termination occurred after the request for FMLA leave was made. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827 (7th Cir. 2012).

Defendant Wisconsin Vision argues that it cannot be liable because it is a joint employer of Foren, and "[i]n joint employment relationships, only the primary employer is responsible for . . . providing FMLA leave." (ECF No. 22 at 14 (quoting 29 C.F.R. § 825.106(c)).) Wisconsin Vision insists that there is "no question" that LBC Optics was Foren's primary employer and, therefore, Wisconsin Vision could not have interfered with Foren's rights. (*Id.*) Wisconsin Vision is correct that, in joint employment relationships, the primary employer is responsible for providing FMLA leave. 29 C.F.R. § 825.106(c). But, identifying the primary employer requires consideration of multiple factors, including a party's authority and responsibility to (1) hire and fire, (2) assign or place the employee, (3) make payroll, and (4) provide employment benefits. *Id.*

Foren contends that Wisconsin Vision was her primary employer. She supports this assertion by pointing to her termination letter, which was sent on Wisconsin Vision letterhead. (ECF No. 31 at 7 n.1; ECF No. 32-1.) She also points to her W-2s, which list Wisconsin Vision as her employer. (ECF No. 31 at 7 n.1; ECF No. 32-4.) She also notes that Sendejaz, a Wisconsin Vision employee, was the one who notified Foren of her termination. (ECF No. 31 at 13.) Finally,

she argues that, regardless of who the primary employer was, both were prohibited from interfering with her FMLA rights. (*Id.* at 14 (citing 29 C.F.R. § 825.106(e).) The Court agrees that Foren has presented sufficient evidence to create a jury question on this issue.

Foren is also correct that, even if Wisconsin Vision is not the primary employer, it can be liable for interfering with Foren's FMLA rights. While FMLA leave is provided by the primary employer, *see* 29 C.F.R. § 825.106(c), "[a] secondary employer is also responsible for compliance with the prohibited acts provisions with respect to its jointly employed employees," § 825.106(e). This "include[s] prohibitions against *interfering* with an employee's attempt to exercise rights" under the FMLA. *Id.* (emphasis added). Therefore, while only one of the Defendants was responsible for providing the leave, neither were permitted to interfere with Foren's right to FMLA leave. Foren alleges that acts by McFadin and George, LBC Optics employees, and Sendejaz, a Wisconsin Vision employee, interfered with her FMLA rights. Accordingly, she may maintain her FMLA interference claim against both LBC Optics and Wisconsin Vision.

Defendants next argue that Foren was not entitled to FMLA leave, since the decision to terminate her was made before she submitted her request. (ECF No. 22 at 15.) They maintain that just because Foren "snuck in" her FMLA request before she was officially terminated, but after McFadin decided to terminate her, does not mean she is entitled to relief under this claim. (*Id.* at 14.) Foren responds that the decision to terminate her was made after her FMLA leave request, not before. (ECF No. 31 at 14.) As discussed above, a reasonable jury could conclude that the decision to terminate Foren was made after she submitted her FMLA leave request. Therefore, Defendants' argument fails, and they are not entitled to summary judgment on Foren's FMLA interference claim.

## CONCLUSION

For the reasons explained above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, ECF No. 21, is **DENIED**.

Dated at Milwaukee, Wisconsin on November 6, 2024.

s/ Brett H. Ludwig<br>
BRETT H. LUDWIG<br>
United States District Judge